VICTORY BAPTIST TEMPLE, INC.,
APPELLANT, *v.* INDUSTRIAL COMMISSION
OF OHIO ET AL., APPELLEES.

(No. 3262—Decided March 24, 1982.)

*Mr. Charles E. Craze,* for appellant.
*Mr. William J. Brown,* attorney general, and *Mr. Bernard C. Fox, Jr.,* for appellees.

QUILLIN, J. Victory Baptist Temple, Inc., plaintiff-appellant, appeals a judgment of the court of common pleas that the Ohio workers' compensation laws as applied to the appellant are constitutional. We affirm.

The stipulations and affidavits of the parties reveal the following facts. The defendants-appellees, the Industrial Commission of Ohio (commission) and the Bureau of Workers' Compensation (bureau) are duly authorized agencies of the state of Ohio which are empowered to administer the workers' compensation law. R.C. Chapter 4123.

The appellant, Victory Baptist Temple, Inc. (Victory Baptist or church), is a nonprofit corporation organized under the laws of the state of Ohio which operates a church and a Christian day school in Elyria, Ohio. The church school is not separately incorporated. In addition to volunteer help, Victory Baptist has persons who are regularly employed to operate the church and the church day school and who receive financial remuneration for their services.

At appellant's request, appellees conducted a rating inspection and assessed premiums pursuant to the workers' compensation law for those persons who receive remuneration from the church. The commission notified the church that it must submit the payroll report and remit the assessed premiums to the commission. Further, the church was informed that if it did not comply with the provisions of the law, enforcement proceedings would be commenced under R.C. 4123.37 and 4123.99(C).

Victory Baptist refused to submit to these demands on the grounds that the law interfered with the sincerely held religious beliefs of the church and its members. The appellant claimed it could not, in good conscience, contribute church monies intended solely for expenditures for religious purposes to the workers' compensation fund. It asserted that to do so would be a "sin." Rather, the church proposed to accomplish the goals of the law by voluntarily caring for its ill or disabled employees.

Appellant brought this action in the court below requesting a declaratory judgment and injunctive relief from the application of the law. Each party filed a motion for summary judgment pursuant to Civ. R. 56. Based on the motions and the accompanying stipulations and af-

fidavits, the trial court issued an order and opinion granting appellees' motion and denying that of appellant. The lower court held: (1) that the state's interest in insuring that fair compensation for an employee injured or killed in the course of his employment is a compelling interest, (2) that R.C. 4123.01(A) and (B) include churches and their paid employees, (3) that application of the law to Victory Baptist does not violate the freedoms of religion guaranteed in the United States and Ohio Constitutions, and (4) that the provisions of the law itself are the least burdensome methods of accomplishing the compelling state purpose.

Assignment of Error No. 2

"2. Upon consideration of the evidence in support of and in opposition to the Industrial Commission's motion for summary judgment, the lower court erred in finding that Victory Baptist is an 'employer' within the meaning of the Workers' Compensation Act and that the protection of its clerical and educational 'employees' is properly governable by the Act."

Relying on the general principle of construing statutes to avoid unnecessary constitutional decisions, the United States Supreme Court in *NLRB* v. *Catholic Bishop of Chicago* (1979), 440 U.S. 490, 501, held:

"The values enshrined in the First Amendment plainly rank high 'in the scale of our national values.' In keeping with the Court's prudential policy it is incumbent on us to determine whether the Board's exercise of its jurisdiction here would give rise to serious constitutional questions. If so, we must first identify 'the affirmative intention of the Congress clearly expressed' before concluding that the Act grants jurisdiction."

Thus, appellant argues that unless the General Assembly expressly included religious institutions within its definition of "employer" (R.C. 4123.01[B]) and "employee" (R.C. 4123.01[A]), the law must be construed to exempt churches

and their ministries from coverage. We do not agree.

Congress did not specifically include church schools in its grant of jurisdiction to the National Labor Relations Board. However, this lack of an express inclusion was not dispositive of the issue before the high court. Rather, the court in *Catholic Bishop of Chicago, supra,* examined the language and the legislative history of the National Labor Relations Act to determine Congressional intent. In the instant case the language and legislative history admit to no other conclusion than that the General Assembly intended to include churches and their employees within the protection of the workers' compensation law.

Section 35, Article II of the Ohio Constitution, states:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. * * *"

Because its purpose is remedial, the Act must be liberally construed. R.C. 1.11. See, also, R.C. 4123.95.

R.C. 4123.01(A) states in relevant part:

"As used in Chapter 4123 of the Revised Code:

"(A) 'Employee,' 'workman,' or 'operative' means:

"* * *

"(2) Every person in the service of any person, firm, or private corporation, including any public service corporation, that (a) employs one or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, * * *.

"(B) 'Employer' means:

"* * *

"(2) Every person, firm, and private corporation, including any public service corporation, that (a) has in service one or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, * * *."

Victory Baptist admits that it is a private corporation and that persons are regularly employed to operate the church and church day school. These people are paid money by the church for performing these services. Thus, the persons receiving pay for operating the church and school fall within the plain language of the statute's definition of employees. Likewise, the church comes within the statutory definition of an employer.

The workers' compensation law has been characterized by the broadest possible coverage with frequent amendments to insure that no class of employers or employees was unintentionally excluded. If the legislature had intended to exclude religious institutions, it had ample opportunity to do so. We believe that the legislature intended for employees of religious institutions to come under the protection of the Act.

### Assignment of Error No. 4

"4. Upon consideration of the evidence in support of and in opposition to the Industrial Commission's motion for summary judgment, the lower court erred in finding that the application of Chapters 4121 and 4123 of the Revised Code to Victory Baptist is not violative of the First Amendment."

Appellant's contention that the compliance abridges its right to freely exercise its religion is controlled by *United States* v. *Lee* (1982), 71 L.Ed.2d 127. In *Lee,* the appellee, a member of the Old Amish faith, contended that, because the payment of social security taxes violated the tenets of his religion, compulsory participation in the social security system interfered with his free exercise rights. The court agreed that the clash between appellee's religious obligation and his civic obligation was irreconcilable but said:

"The conclusion that there is a conflict between the Amish faith and the obligations imposed by the social security system is only the beginning, however, and not the end of the inquiry. Not all burdens on religion are unconstitutional. See, *e.g., Prince* v. *Massachusetts,* 321 U.S. 158 * * * (1944); *Reynolds* v. *United States,* 98 U.S. 145 * * * (1878). The state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest. *Thomas, supra; Wisconsin* v. *Yoder,* 406 U.S. 205 * * * (1972); *Gillette* v. *United States,* 401 U.S. 437 * * * (1971); *Sherbert* v. *Verner,* 374 U.S. 398 * * * (1963)." *Id.* at 132.

Finding that the social security system serves the public interest by providing a comprehensive, nationwide insurance system with a variety of benefits available to all participants, the court held that, "* * * the government's interest in assuring mandatory and continuous participation in and contribution to the social security system is very high." *Id.* at 133.

The court then considered whether accommodating the Amish belief would unduly interfere with the fulfillment of the governmental interest and found:

"* * * Because the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax." *Id.* at 134.

Assessments pursuant to R.C. Chapter 4123 are analogous to the mandatory contributions required by the Social Security Act. In the instant case, the state has an "overriding governmental interest" in compensating workers and their dependents for death, occupational disease, and injury arising out of and occurring during the course of employment. To accomplish this purpose, the state has enacted comprehensive legislation creating a system which requires support

by mandatory contributions by covered employers. Widespread voluntary coverage would undermine the soundness of the program and be difficult, if not impossible, to administer with the myriad of exceptions flowing from a wide variety of religious beliefs. The assessments imposed on employers to support the system are uniformly applicable to all, except as the General Assembly provides explicitly otherwise. Thus, we find no constitutionally required exemption for appellant from the operation of the Workers' Compensation Act.

Assignments of Error Nos. 1 and 3

"1. Upon consideration of the evidence in support of and in opposition to the Industrial Commission's motion for summary judgment, the lower court erred in finding that O.R.C. Chapters 4121 and 4123 apply to Victory Baptist."

"3. Upon consideration of the evidence in support of and in opposition to the Industrial Commission's motion for summary judgment, the lower court erred in finding that the protections afforded to workers at Victory Baptist under the Church's Scriptural duty to aid one another in time of need due to accident or illness is 'independable [*sic*] and illusory.' "

In *Lee, supra,* the appellee demonstrated the Amish capacity to care for their own. However, despite the fact the Amish make sufficient provision for their dependent members, the high court was not persuaded to exempt the appellee from paying social security assessments. In the instant case, Victory Baptist is within the coverage of the Workers' Compensation Act, even though it would aid its workers in time of illness or injury.

There being no genuine issue of material fact between the parties, the trial court properly granted appellees' motion for summary judgment pursuant to Civ. R. 56(C).

The judgment is affirmed.

*Judgment affirmed.*

MAHONEY, P.J., and BELL, J., concur.